Good morning, Your Honor. Good morning, Your Honors. May it please the Court. My name is James Dare. I represent Jill Platt in this appeal. Your Honors, I'd like to begin by acknowledging the elephant in the room for this appeal, which is the limited scope of this Court's substantive reasonableness review. I acknowledge it, but we believe this case falls within the scope of that review because of two unusual features of the resentencing below. First, the only reasons cited by the district court for imposing further incarceration upon Ms. Platt didn't distinguish her from any other relevant defendant. And second, the district court, for the reasons we explained in our papers, gave unreasonably short shrift to all the mitigating factors that, if anything, called for a greater variance than it had previously imposed, not half the variance that it decided to impose upon resentencing. So it's based on that individualized application of the 3553A factors below that we're arguing the 30-month sentence was substantively unreasonable. So I should say that 30 months may not seem shockingly high as an absolute matter to a court of review that's accustomed to reviewing vastly longer sentences. But our point here is that there were no individualized reasons justifying the sentence that the district court gave. Turning to the reasons that the Court cited. It's rare that we would find a sentence unreasonable when it is well below the guideline range. That's absolutely correct, Your Honor. But it is not the elephant in the room, really, that you have to overcome. Of course, Your Honor. So let me turn to the reasons that the district court cited for giving the sentence that it did below the guidelines range and the length that it imposed below the guidelines range. So the Court referenced Ms. Platt's what it referred to as her high level of culpability. And by that, it seems to have meant both her willfulness in that she knew what she was doing was wrong and the presence of vulnerable victims. But neither one of those distinguishes Platt from any of the defendants in the case. In fact— Why do you think that's a defect? These were aggravating factors that informed the guidelines, and the district court found that they applied to her. The reason, Your Honor, is that willfulness isn't an aggravating factor. It's an element of the offense. But it did find that there was nothing that mitigated her involvement in this crime. That's true, Your Honor, but we believe that that was error for the following reasons. The district court — we offered to the district court three mitigating factors, Ms. Platt's contrition, which had changed since the previous sentencing. She'd expressed contrition twice, both orally and in writing to the district court. The district court rejected that, essentially, saying that it — her letter showed more attention to herself than to other victims. But in fact, if— I mean, it has the defendant in front of her and has dealt with her over various appearances. It is absolutely correct to defer to the district court's analysis of Ms. Platt's demeanor. But, Your Honor, the letter is in the record. It is not in the appendix, but it is document number 3686 in the record below. And it begins by accepting responsibility and acknowledging the harm that Ms. Platt caused to the victims. And, in fact, her oral statement, which appears at page 194 of the appendix, only refers to her acceptance of responsibility and her remorse at what it is that she did. In addition, Your Honor, the court essentially minimized the fact that Ms. Platt's son died after she was released for bail on appeal on this prison, on — after the previous appeal. And in addition to the fact that her husband had died and her mother had died, that left her with no financial prospects at all. The court's — Are you imposing on the district court the burden to address specifically each one of your arguments at sentencing? You said, specifically, I've considered the remarks here today by you and your counsel and the remarks by counsel for the government. Does he have to go through and say, okay, now as to the letter about your son, you know, I've considered that as well. What's the burden on the district court to respond to your arguments? I think that the district court fulfilled its burden. And we're not raising a procedural reasonableness argument. I believe that the court did all the procedural things that it was required to do. What we think was faulty was cutting the variance that the court imposed in half from the prior sentence, even though the developed record required, if anything, more of a cut in the interim. But the district court explained it. It said that it departed to a — or varied to a greater degree at the initial sentence because it was operating with a higher loss level, and it thought that that somehow unfairly aggravated the defendant's sentencing range. Once the loss figure was lowered, the district court explained that it didn't feel a need to grant the same percentage departure. I will say that we are, you know, the proportions, 35 percent, 38 percent, is not wildly different. If I — my time is up. May I, if I could, address the — answer the question? Your Honor, as to those two points, first, the judge never mentioned proportionality in his reasons. And so we're solely referencing the factors that the court did mention. The precedent is discussion of a higher loss at the first sentencing versus a lesser loss now. As to that point, Your Honor, the court misremembered what it had done in the prior sentencing. So in that colloquy between me and the judge, which appears on 201 of the appendix, the court said that it had previously departed from the heartland because of a lesser loss amount. But in fact, if you look at the — what, in fact, the court did, which is on page 160, 161, and 162 of the appendix previously, it had set Ms. Platt's own personal loss, independently of anyone else's loss, as the absolute minimum for her sentence, and then said that he thought the jury found that she was responsible for more loss. It then went on to say the reason that he was departing from the heartland was because of Ms. Platt's role and profit as part of a spectrum of offenses. But that isn't a reason — that reason is the same, both in the prior sentencing and in this sentencing. Her role in the offense didn't change. So it's for that reason, Your Honor, we would think that it didn't require a lesser variance, if that makes sense. If I could reserve the rest of my time for rebuttal. Thank you, Your Honor. We'll hear from attorney for Donna Bellow. Good morning. My name is Norm Pattis. I'm here on behalf of Donna Bellow. On the proportionality question, the variances were not that significant between the first sentencing and the second for Ms. Platt, but they were very significant for Ms. Bellow. It's roughly 26 percent off the guidelines the first time, 6 percent off the second, and for no discernible reason that we can see. Judge Radji, addressing your point about the factors Judge Thompson considered, I agree with Attorney Darrow. The Court misrecalled its analysis. In the first case, it did a functional analysis, and it concluded that this pyramid scheme was not operating as a typical one did because people rotated through the top, and these individuals, to the extent that they gained, they gained in a like manner with other participants. So from our view, it was unreasonable to give a discount on a functional analysis of a heartland departure of 26 percent in one and 6 percent later. There's no principal distinction. The difference between the loss found by Judge Thompson in the original sentencing and the stipulation of loss that guided the Court in the second sentencing, it was over a million dollars in the first case. In the first case. And the second one was 90-something thousand dollars. Correct. Is that irrelevant, the extent of that? It's not irrelevant, but on this record, it's not how the Court decided the case. The first heartland analysis was purely functional in character, and so this Court is going to have to conclude whether a difference in amount, a difference in amount yields a difference in kind. And I think that's a logical leap the Court has to make and that Judge Thompson made without explanation. And when we called him on it at sentencing, his explanation was not convincing. We also raised an issue in the first brief, or the first appeal that the Court did not address and that I will use a little bit of my time on now. We are urging the Court to take a look at the Stockwell analysis from the Ninth Circuit to discuss the – I just go back to what you said, it wasn't convincing. But this was raised at the end of the sentencing and he said, the reason you didn't hear that today is because at the prior sentencing we had a loss amount that was much greater and included loss amounts, a loss amount that I'd not consider today. But that's not what he did the first time around. If you read through his analysis of the heartland departure in sentencing number one, he talked about gain, but he talked about gain as filtered through the prism of function. In other words, these individuals were at the apex, as it were, of these individuals. And he talked about how this is a different kind of a fraud because this defendant was not responsible for all of it directly. There were other people who kind of mushroomed involving other people. So that's why he took it out of the heartland at the first sentencing, right? But there was no – they didn't maintain a stake, as it were, in the activities of others to the degree they benefited. They benefited in like manner. The fact that there were so many others and the loss amount was so much larger didn't make them more culpable because they behaved as other similarly situated people did. And so as I viewed the second sentencing, we had the same functional attributes in terms of what was being sentenced, a different loss amount. But if you filter out gain to the defendant, which seemed to be what the judge was referring to, and hold that to the side, you still have the same function. So why not the same result? Why not the same? I'm following you. The guidelines on the first sentencing were calculated by reference to the total loss, right? Yes, ma'am. Okay. So when the district court explained why it was not going to sentence within that guideline range, it alluded to these other circumstances about loss that you're referencing now, right? Yes. Once the loss figure was lower and yielded a lower guideline range, the court's function wasn't to decide just one factor, but the totality of factors provided in the statute. And your burden here is to say to us that for your client, a four-year sentence for a fraud of this scope is outside the permissible range for a sentence in this case. And I'm not sure I understand how you think we would reach that conclusion. If this was the first sentencing in this case, I'd have a more difficult case. But given the history in it that it is the second sentencing in the first case, the court, after a four-week trial, considered the evidence before it and concluded that my client and Ms. Platt had behaved in ways similar to other charged and uncharged participants and that their function in the loss amount was to receive a certain amount, or a similar amount as anyone else. The loss amount was very high there, and there was an error in the Studley calculation. This court remanded for further sentences. We stipulated to a far lesser amount, which was direct gain to the defendant at that point. But the function, her role in the conduct, had not changed. And our view is that because this was a functional analysis, the loss amount didn't matter. Now, clearly, when the court conducted its first analysis — It is a very important factor in the guidelines. The district court is obliged to consider the guidelines when it imposes sentence. It thought that the loss amount the first time around was just somehow not reflective of the defendant's culpability, but this time it wasn't as concerned about the disparity. It did give your client a below-guideline sentence, but not as much. No, and it's our view that it should have been as much because nothing had changed. The court shifted it. The basis for the $95,000 stipulation was actual gain to this defendant rather than foreseeable loss. A moment ago, you think loss is irrelevant, but I'm not sure how we would reach that conclusion. If you look at the record as a whole and you look at the functional analysis that was applied, was it triggered? Was that analysis triggered by loss amount? Potentially, and I can even concede that it was, but it doesn't change her function. And if her function remained the same, the outcome should have been the same and the same discount as it were should have been applied. I see I've exceeded my time. One last sentence. Please reach the trial tax issue. I mean, last time around the court didn't reach it because it didn't have to, but if this court is truly concerned with assuring respect for the law, which is a primary purpose in sentencing functions, this is the perfect guidelines-driven record independent of a habeas. You seem in your papers to suggest that the panel that came before us in this case was interested in that. It was. But I just reread the summary order again this morning. I didn't see anything. Was it from the argument that you raised? Well, yes, and I don't know if it's improper. I've never been asked this question, but I'll go to my grave remembering the following line from Judge Parker, addressed to my colleague who's not here today, Douglas Morabito. Twenty-two minutes into the 14 minutes the government had been allocated, Judge Parker turned to Attorney Morabito and said, tell me why Mr. Pattis isn't right and that a trial tax was not imposed in this case. I encourage you to listen to that transcript. Thank you, counsel. We'll hear from the government. Good morning. May it please the Court, Sarah Carwin for the United States. Your Honors, Judge Thompson's decision to impose a below-guideline sentence of 30 months for the defendant Platt and a below-guideline sentence of 48 months for the defendant Bellow for a lengthy wire and tax fraud with significant victim impact was both substantively and procedurally reasonable in light of all the statutory factors. I'd like to highlight, as the court did, the district court did, throughout the resentencing, Judge Thompson reiterated how familiar he was with the case. He did, Your Honor, yes. He indicated that he had gone back and not only reviewed his notes from the first sentencing, he had reread all the transcripts and all the sentencing memorandum. He reiterated that he was familiar with the impact that this crime had on the victims, and that's laid out in both PSRs, paragraph 19. And then he carefully articulated what he saw were the important mitigating and aggravating factors in this case, focusing on the effect that it had on the victims. He thought he didn't have to do a heartland analysis because he did an individual analysis. Isn't that his conclusion, and is that correct? It is, Your Honor. The judge certainly knew that he had the ability to depart based on a heartland analysis. He had done so in the first sentencing. And I don't think there's any evidence that he misremembered what he had done in the first sentencing. He talked in the first sentencing about having a defendant who's being held responsible for this huge amount of money, over $1.7 million, and differentiating them from a Ponzi schemer who would take all of that $1.7 million and keep it for themselves. He recognized in the first sentencing that that $1.7 million did not all flow directly to both defendants. And then at the resentencing, the defendants were only being held responsible, in terms of the guideline calculation, for how they had personally profited. And so the judge explained, when confronted with this, it's at the joint appendix on 422, that that concern had dropped out, and as a result the defendants had substantially lower guideline ranges. I'd also just, in response to my colleague's argument that the judge didn't conduct an individualized assessment of the defendant's circumstances, I don't think that that's supported by the record. He tied specifically the conduct here in the tax and wire frauds to the defendant's conduct. He noted that they not just broke the law, but they flouted the law. He cited two recordings, covert recordings and emails, where the defendants joked in the midst of the investigation about they would like to go to jail and get free meals in a cot that was admitted at trial. And he also highlighted the fact, and this is set forth in PSR paragraph 19, that many of the victims were people who could not afford this $5,000. People took out cash advances on their credit cards. They took out second mortgages on their homes. They used child support payments based on the promises and representations that the defendants had made. So he cited that collection of evidence as concerning and as aggravating, while also recognizing for both defendants the presence of some mitigating factors. And I think Judge Thompson noted that some of those mitigating factors were heartbreaking, but also noted that he would expect to find the same in the circumstances of the victims, that as people go through life, they lose family members, they fall upon hard times. And he didn't find that those mitigating factors were so out of the ordinary as to warrant the enormous departure that the defendants had both requested. In terms of the trial tax issue that Attorney Pattis left off with, I would just note that there's no evidence in the record to support a conclusion that a trial tax was contemplated and imposed. And, in fact, the only evidence in the record is Judge Thompson saying that he would, quote, if anyone were to read or understand his comments to mean that he was imposing a trial tax. And that's at Joint Appendix 419. He set forth both with respect to both Ms. Platt and Ms. Bellow, the factors that he thought warranted the sentences. And he also explained with respect to the defendant who did not go to trial, Ms. Hopkins, why he thought the sentence he imposed on her was appropriate and how she was distinguished from the other defendants. So, Your Honors, based on this- Can I talk about grouping? Yes, Your Honor. Judge Newman's concurrence in Gordon seems to make a lot of sense. I know other circuits have agreed with him on this. How is the loss from the tax count and the loss from the fraud count or counts similar so that they should be grouped? And how are the victims similar so those should be grouped and produce a higher guideline range here? Isn't Judge Newman right about that? Well, Your Honor, I think here where the fraud in and of itself was one to circumvent the tax laws, that's the government's argument that there's similarity here in terms of grouping them under 3D, 1.2D. The point was to get the money and then later on figure out how not to pay taxes on it. But it wasn't directed from the very beginning. It's just a tax scheme, right? I think that's correct, Your Honor, yes. And I think, you know, there is this question given the circuit split as to whether or not how the grouping analysis should play out. I would note here that in the first sentencing, a grouping challenge was not raised because it benefited the defendants to have the conduct grouped. And I would note that all the cases cited on government's brief page 60 in terms of the circuits that do group or, excuse me, that do not group under 3D, 1.4, in all those cases, it was the defendant arguing for grouping because it resulted in a lower guidelines range. And it was the government taking the opposite position here. So by function of the guidelines, it's not always that grouping, as was done here, is going to result in a higher guideline sentence. There are often cases where it results in a lower. It did in the second resentencing, yes. It was a modest guideline difference of 51 to 63 months as composed of 46 to 57 months had no grouping occurred. Thank you, counsel. Thank you, Your Honors. Each of the defendants has retained one minute. Mr. Darrow. Thank you, Your Honor. Your Honors, the issue is not for Ms. Platt that the judge didn't consider the evidence at trial. And the issue is not that he didn't conduct an individualized analysis. And the issue is not that the judge procedurally erred. That's not what we're arguing. The question here is whether the reasons that the judge mentioned warranted a 50 percent discount in the variance that he had imposed before. And I wanted to just, with my remaining time, highlight an issue that had not yet been highlighted in the argument, which is the issue of relative culpability. Your Honors, Ms. Hopkins, who pledged shortly before trial, received probation. There were two other participants in the scheme, one of whom made $60,000, who also received probation. And other participants with similar roles to Ms. Platt and who received more money than she did weren't even charged. That is a factor that, it's safe to say, wasn't on the radar screen for this judge in terms of the reasons that he gave. He put a lot of effort in distinguishing Hopkins at her sentencing, talking about forthcoming about the conduct, her remorse, she returned the money, and her willingness to testify. He spent a lot of time talking about that at her sentencing. Can we consider that? Your Honor, I think that the court is restricted to considering what the reasons the judge gave for Ms. Platt's sentence. The judge didn't say, well, B.J. Hopkins didn't go to trial, you did, so I'm going to give you a little bit more time. He didn't say that. All he said was, I think Ms. Hopkins' case is different. And what we're trying to say here is that Ms. Platt couldn't give the money back, for example, because she didn't have money. So that's why it's incumbent on the judge to explain a little bit more, particularly because this is a statutory sentencing factor, unwarranted disparities among similarly situated defendants. And it's incumbent on the judge to explain a bit more than he did. Thank you, Your Honors. Mr. Pattis? Plea bargaining, the United States Supreme Court tells us, is now where the action is. Ninety-seven percent of cases in the federal system are resolved that way. You are the market regulators. This is an unregulated market, and we say with respect to Hutchings and Stockwell, the Ninth Circuit decision, this court has an independent responsibility to police that process. What's wrong in the standard manner in which plea bargaining takes place, in Connecticut at least, in the federal system, is that early pleaders are always sentenced after the defendants who go to trial are sentenced. And that simply should raise questions in this court's mind about what's going on in that market. The value of a plea is determined by the ---- Has there been arguments raised in this case? It's in the brief, yes. But as an error of some sort that we are supposed to rely on as a basis for finding this sentence substantively unreasonable? No. I raised it as an independent Sixth Amendment claim, that there was a trial tax posed in violation of my client's right to go to trial. She was sentenced more harshly than a woman who pled for no reason that's discernible on this record, other than the fact that one pled and one didn't. If Ms. Hopkins' guidelines ---- You specifically considered that argument and rejected that it was imposing a trial tax. Well, I'm sorry, Judge, if I don't take that at face value. That's why we, in a Title VII context, we talk about disparate impact as independent of intent. And Stockwell says that the Court should not use pleas as a carrot and stick to move a congested docket and should even avoid the appearance of doing so. Ms. Hopkins' guidelines called for a sentence in the range of 37 to 46 months. If she had been given her three points off for acceptance, which is what the guidelines contemplate for a person who early accepts, she would still have gone to prison and not walked out on probation. Deferring her sentence until the end of the process raises questions about what anchors a court's decision on an appropriate sentence. Nothing in the guidelines says early pleaders should be sentenced after the trial of those who insist on their Sixth Amendment right. And our view is this Court should take a jaundiced view of that. Thank you.